IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Paul Daval,<br><br>            Plaintiff,<br><br>   v.<br><br>Merrill Zahtz, *et al.*,<br><br>            Defendants. | Case No.: 21-cv-50405<br><br>Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

      By way of background, Plaintiff Paul Daval sues several Wexford employees for deliberate indifference to his medical needs while incarcerated at Dixon Correctional Center. His amended Complaint alleges that the Defendants knew Daval suffered chronic Hepatitis B and serious liver damage, and yet, delayed medical treatment until his condition worsened. *See generally* Dkt. 14. Daval's retained opinion witness Dr. Nancy Reau has over twenty years' experience treating viral hepatology and currently serves as the Chief of Hepatology at Rush University Medical Center. Dkt. 82-2, 28–29. After reviewing numerous depositions, medical records, and the operative Complaint and Answer, Dr. Reau concluded (among other things) that Wexford's course of treatment "most likely" caused Daval to develop liver cirrhosis, severe symptoms, and an increased risk of liver cancer. *Id.*

      Before the Court is the Defendants' motion to bar these conclusions under *Daubert v. Merrell Dow Pharma*, 509 U.S. 579 (1993). Working in tandem with Federal Rule of Evidence 702, *Daubert* requires district courts to ensure that a proposed expert's testimony is relevant and reliable. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (quoting *id.* at 589); *see* Fed. R. Evid. 702. Though the proponent of the expert bears the burden on both inquiries, *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009), the Defendants narrow the issues, contending that Dr. Reau's causal conclusions rest on insufficient data and flawed methodology. The Court disagrees.

      *Daubert*'s reliability prong is neither as complicated nor as demanding as the Defendants believe. Reliable opinion testimony under Rule 702 rationally connects each conclusion to some supporting data, including "how" and "why" the expert

1

reached her opinions. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 809 (7th Cir. 2013). Contrastingly, experts who make speculative, conclusory, or unsupported allegations aren't experts at all. *See Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994); *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989); *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 3:17-cv-50107, 2024 U.S. Dist. LEXIS 58878, at *30 (N.D. Ill. Mar. 29, 2024).

Drawing on her specialized clinical practice and review of the relevant documents, Dr. Reau's 26(a) report details Daval's treatment history and condition before attributing his risk of cancer to "[o]ngoing hepatocellular injury with hepatic necrosis resulted in fibrosis and, because it was not controlled, cirrhosis." Dkt. 82-2 at 35. Further satisfying Daubert's "how"[1] and "why"[2] requirements, the report explains the reasons:

> The medical records also show that Mr. Daval suffered several symptoms consistent with what one would experience due to an HBV infection. For example, Mr. Daval experienced fatigue, which can be strongly related to liver damage, cirrhosis, and viral hepatitis. Properly treating Mr. Daval beginning shortly after he tested positive for hepatitis B would have significantly reduced the likelihood of Mr. Daval developing cirrhosis, because cirrhosis happens progressively over a long period of time in response to a hepatitis B infection.

*Id.* at 34 (citation omitted); *see Gayton v. McCoy*, 593 F.3d 610, 618 (7th Cir. 2010) (crediting the parallel methodology of reviewing a "cold record" of autopsy report, medical records, and witness testimony); *Ortiz v. City of Chicago*, 656 F.3d 523, 537 (7th Cir. 2011) (same). Dr. Reau's report rationally connects Wexford's medical treatment to Daval's cirrhosis, symptoms, and risk of liver cancer; whether it definitively *proves* those relationships, as the Defendants argue, is outside *Daubert*'s scope. *Daubert* is concerned with methodology that experts use, not the

---

[1] "Hepatitis B is a cancer-causing virus. The most common risk factor for liver cancer is a chronic infection with the hepatitis B virus, and those who are chronically infected with hepatitis B have a 25% to 40% lifetime risk of developing cancer. Integrated HBV DNA increases liver cancer risk even with viral suppression. Patients with cirrhosis are at higher risk for hepatocellular carcinoma (i.e. liver cancer)." *Id.* at 34.

[2] "If Defendants had treated Mr. Daval earlier, there is a higher likelihood that Mr. Daval would not have developed cirrhosis of the liver. Because of Mr. Daval's cirrhosis of the liver, he is at a much higher risk for developing cancer." *Id.* at 35.

conclusions experts reach. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017).

In what reads more like a motion for summary judgment, the Defendants incorrectly summarize the record—ironically, while arguing that it's *Dr. Reau* who misunderstands the relevant context. First, the Defendants wrongly assert that Dr. Reau relied "only" on Daval's fatigue in reaching her conclusion when, according to her deposition testimony, she knew he suffered nausea and "a lot of musculoskeletal [issues]." *Compare* Dkt. 82 at 5, 9–10 (stating that Dr. Reau's opinion was "only" based on evidence that Daval was fatigued in July 2018) *with* Dkt. 82-1, 77:8–9 (Dr. Reau testified under oath to her knowledge of another symptom). Second, in another example, the Defendants move to bar an opinion not presented to the Court. *Compare* Dkt. 81 at 10–11 (moving to bar the conclusion that Daval developed grade 4 liver cirrhosis "solely" while incarcerated) *with* Dkt. 82-2 (Dr. Reau's narrow conclusion that Daval suffers more than one severe symptom consistent with delayed treatment). These mischaracterizations are especially concerning given the Court's public admonishments against "obligatory" or reflexive *Daubert* motions, which the Court expressed to prior counsel. *E.g., Madison St. Props., LLC v. Marcus Corp.*, No. 20 CV 50471, 2023 U.S. Dist. LEXIS 160196, at *12 (N.D. Ill. Sep. 11, 2023). As previously noted, "[t]he costs of *Daubert* motions, to the court and the parties, is staggering. The time-consuming nature of *Daubert* motions is overwhelming." *In re Deere & Company Repair Services Antitrust Litigation*, E.C.F. Dkt. 22-cv-50188, Dkt. 213 ("Court's Response to Proposed Case Management Order No. 5") at 2 (N.D. Ill. Feb. 18, 2025) (quoting *White Buffalo Env't. Inc. v. Hungry Horse, LLC*, 2023 U.S. Dist. LEXIS 48355, at *22 n.8 (D. N.M. Mar. 22, 2023)). Mischaracterizations make that process even slower.

More to the point, the Defendants' motion misunderstands *Daubert*. In assorted causal challenges to Dr. Reau's conclusions, the Defendants contend that she failed to account for relevant variables, failed to obtain a control sample, and ultimately reached the opposite conclusion than their own expert. Dkt. 82 at 2–5, 10–13. "As a general rule," however, "questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion, not its admissibility." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119–20 (N.D. Ill. 2005); *Africano v. Atrium Med. Corp.*, 561 F. Supp. 3d 772, 778 (N.D. Ill. 2021) (collecting cases); *Ortiz,* 656 F.3d at 526. As already stated, the proper *Daubert* inquiry "solely [focuses] on principles and methodology, not on the conclusions that they generate." *Daubert* 509 U.S. at 595; *see Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). So, the Defendants' causal challenges are all

factual matters necessarily reserved for the trier of fact or, if appropriate, on summary judgment. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). *Daubert* was never intended to replace the normal adversarial process, usurp the jury's role, or referee a battle of the experts, as the Defendants hope. *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 814 (7th Cir. 2012).

The Defendants' motion to limit Dr. Reau's testimony is denied accordingly. Dr. Reau may opine on whether the Defendants' delay contributed to Daval's symptoms, cirrhosis, and risk of liver cancer, consistent with her report and subject to "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596.

Entered: July 8, 2025    By:_____
                              Iain D. Johnston
                              U.S. District Judge